Good morning, your honors. I'm Lloyd Bookman on behalf of the plaintiffs and appellants. I intend to spend all my time this morning addressing the question of issue waiver, whether the hospitals in this case have waived their ability to challenge the outlier rule to the extent they didn't bring the specific challenges that they're bringing in court in the notice and comment rulemaking. Well, in making that argument, will you assume then that the facts of this case would indicate that the secretary has acted contrary to statute and that a rule has been adopted with no objection? And then tell me what the result is. Do I apply the statute or do I apply the rule that is inconsistent? I'm trying to see if I understand your question, your honor. Your honor, I have a statute that directs the secretary to pay the plaintiff $5. Right. The secretary adopts the rule and says we'll pay the plaintiff $3. The plaintiff doesn't object to the rule during the rulemaking process. A case comes along, the plaintiff treats the patient, sends the secretary a bill for $5, the secretary admits $3, and the plaintiff sues for $2. Got it? I understand that. Okay. Okay. Is it my view that under those circumstances the plaintiff would have the ability to bring its claim directly in court regardless of whether it had raised the claim in the rulemaking? The answer is yes, and that's what I'm going to be talking about. And I'm going to be talking about it in basically three stages. I'm going to talk about what we believe to be the controlling Supreme Court precedent in this area, and that's the Sims case. I'm then going to turn to the Ninth Circuit precedent, and particularly ExxonMobil, and explain our view as to why ExxonMobil's not binding on this panel. And lastly, I'll discuss some of the policy implications of applying the doctrine of issue waiver in notice and comment rulemaking. Sims v. FL is what we believe to be the controlling Supreme Court precedent. It came down in 2000. In Sims, the court established an analytical framework for determining when to apply issue waiver in an administrative proceeding. And the court set up what we perceive to be a two-step analysis. First, you look at the applicable statute pertaining to the particular proceeding and determine whether Congress has imposed issue waiver. And if Congress has, of course, the courts follow what Congress has said. But if Congress has not, then the courts go to the second step of the analysis. Both in the Sims case and in our case, it's undisputed that Congress hasn't mandated issue waiver. Congress hasn't mandated issue waiver in the Medicare Act. Congress hasn't mandated issue waiver in the APA. So we don't have a statutorily required issue waiver in this case. So then we move to the second step of the Sims analysis. What Sims says is even in the absence of a statute, yeah, the courts can impose the issue waiver doctrine on administrative agencies and administrative proceedings, excuse me. But only to the extent that the administrative proceeding is analogous to adversarial litigation. In Sims, the court noted that the whole doctrine of issue waiver or issue exhaustion is derived from courtroom litigation, court litigation where superior courts require issues to be raised generally in the lower courts prior to as a prerequisite of hearing that issue. So the court took a look at the proceeding in Sims, the Social Security hearing proceeding at issue in Sims, determined it was really not adversarial but what they termed investigatorial or inquisitorial, and said we won't apply issue waiver because we don't have an adversary proceeding. Well, notice and comment rulemaking is no more adversary than the proceeding at issue in the Sims case. In notice and comment rulemaking, an agency is seeking public input in order to assist the agency in adopting better rules. It's not a ---- The agency give personal Mullane v. Central Hanover Trust notice to each Medicare beneficiary that would be affected by the rule? No. It's just a notice published. It's just something in the Federal Register. Correct. It's a notice of proposed rulemaking in the Federal Register. For the Secretary. And that's all the APA, that's all the Medicare Act and the APA require, to be honest with, to be honest, Your Honor. But anyway, so we think that Sims, you know, applying Sims here precludes the, applying the doctrine of issue waiver to notice and comment rulemaking. So that takes a ---- Rule, all of the, or put in effect, render irrelevant all of the court of appeals decisions which go the other way, which apply issue waiver and notice and comment rulemaking? The short answer is yes. With the exception, the limited exception that can be found in Vermont Yankee, that was discussed in the Ninth Circuit in the Bonneville Power Authority and Koukoukama cases. In those two cases, the Ninth Circuit interpreted Vermont Yankee as permitting issue waiver only where the litigant participated in the rulemaking, made a comment, the agency requested help with that comment, and the litigant refused the agency's request. That's a special situation. That's a special. Aside from that, the answer is yes. Any of the court of appeals cases come down subsequent to Sims? There are two that I'm aware of. There may be others. There is one, and I don't remember the citation, Your Honor, it's in the briefs, particularly in the government's brief. There's a case out of D.C. that came down, I believe, in 2002. The sole discussion of Sims was a single sentence which said, we don't have to follow Sims because Sims dealt with issue exhaustion and not issue waiver. And frankly, I don't understand the difference between those two concepts. You don't agree with that? I don't agree with that. Issue waiver and issue exhaustion are exactly the same thing. The question is, if you don't bring an issue in an administrative proceeding, can you raise that issue later on in court? There's no difference. It's a semantic game. There's absolutely no difference between those two concepts. And the fact that the court in Sims talks about issue exhaustion, later on it talks about issue waiver. And the court in Sims relies on the old L.A. Tucker truck lines case, which is an adjudicatory case, which started the whole notion of issue waiver in the courts as applied to administrative proceedings. And that was clearly an issue waiver case. So I think the D.C. Circuit was very flippant, and I don't think it provided any analysis. There is one recent, and the government just provided supplemental authority the other day, including a very recent, I think an October case that was decided by the Fifth Circuit, and consisted, unfortunately for us, with City of Seabrook, which is one of our favorite cases in this area, in which the Fifth Circuit narrowly pigeonholed City of Seabrook and ruled that issue, generally issue waiver, could apply in notice and comment rulemaking. That court doesn't even talk about Sims. Sims was not a rulemaking case. Correct. It was an adjudicatory case. Right. So why does it establish the binding principle governing rulemaking? Well, if you start with where did the rules that, where did the doctrine of issue waiver as applied to rulemakings come from? It came from adjudicatory cases. It came from L.A. Tucker truck lines. If you go back to the cases that initially start applying issue preclusion, that's where they start. But that doesn't mean they're limited to those cases. No, it doesn't. But it means that that's, you're right, but it means that that's where the analysis comes from, we believe. And Sims doesn't talk about not applying. It talks about administrative proceedings. It doesn't restrict itself to adjudications. So I don't. What caused the distinction? Does it not between adjudicatory and rulemaking? Sims doesn't say.  I don't recall that distinction, Your Honor. I recall a distinction between adjudications which are adversarial and those that are not. But I don't recall a discussion in Sims of a distinction between adjudication and rulemaking. Let me move to Exxon Mobil for a few minutes, which is a case that the government cited as the binding, in their view, on this issue. Exxon Mobil had before Sims. One month. I know it's, I heard Your Honor's discussion of Miller just a few minutes ago. I think Exxon Mobil decided one month before. Did it chill your blood? Pardon me? Did it chill your blood? No, it's cold in here. It made me think. It's nothing worse than sitting there on the benches and having an issue discussed that bears negatively on your argument. You can't say anything. It made me think. Let me tell you, which is a good thing. And it made me think that, yeah, I understand our case, Exxon Mobil came down one month after Sims. Before or after? I mean, one month. Small words. Well, I think it's an important word. But I think that the teaching of the Miller case is what did the lower, did the Ninth Circuit, did the panel apply the rationale of the Supreme Court, or at the very least, have a meaningful opportunity to apply that rationale, even if it doesn't discuss the case. Here, so you think maybe the Lexus machine was broken that day? I think, well, if you take a look, and I'll talk about this some more. If you take a look at the Exxon Mobil case, the briefing at Exxon Mobil was completed prior to Sims coming down. Again, you've got, well, a one-month time frame. I think that's not a far stretch of the Miller case to apply it in this situation to Exxon Mobil. But let me go beyond that. I think another very good and perhaps independent reason that Exxon Mobil is not binding is you take a look at Exxon Mobil. It discusses the issue waiver rule in a single sentence. It doesn't have any analysis. It just has a flat statement of a rule. And it doesn't talk about, really, about rulemaking, that we're applying issue waiver to rulemaking. It says basically we apply issue waiver in administrative proceedings, and the issue wasn't raised below, and it cites a Ninth Circuit adjudicatory case. But it's a holding. It's a holding. Yes, it is. It is a holding that, in that case, that issue, yeah, we'll apply issue waiver to rulemaking. You're absolutely right, Your Honor. But — Well, in some of the respects, it's an unfortunate thing. It's an unfortunate sense. But what the — if you take a look at the briefs and the analysis, the Court doesn't appear to have considered nor have you been given a meaningful opportunity to consider the question of whether there's a difference between adjudication and rulemaking. You look at the briefs, which we've submitted in this case, the briefs in ExxonMobil, the government raised issue waiver for the first time in ExxonMobil in a footnote in its briefing opposition. The plaintiff responded in a footnote in its reply brief, and in that footnote, it didn't say, gee, we shouldn't be applying issue waiver to rulemaking. It didn't raise the issue. It just said we shouldn't apply issue waiver in this particular case because there's enough in the record that we would satisfy an issue waiver doctrine. And it shouldn't be applied. So the parties never presented to the Ninth Circuit the question of whether — in ExxonMobil, the question of whether issue waiver ought to be applied in a rulemaking and whether there's a difference between a rulemaking and an adjudication. They certainly could have petitioned for rehearing if they weren't satisfied with the way the decision dealt with the issue. They could have, but I think the key question is whether the Court considered the argument. And since your client didn't file an amicus waiver in Exxon, you're foreclosed from arguing it. Yeah. You're waived. I've waived it because we didn't file an amicus. I'm not familiar with that doctrine, Your Honor. Related doctrine. Has the Supreme Court other than — the Supreme Court has never spoken on this. Aside from Sims — no, Sims is the last word from the Supreme Court. Oh, right. We discussed how — Right. Aside from Sims, the Supreme Court hasn't — It's all court of appeals-made doctrine. Correct. That's absolutely right. The right for the overruling. Would you prefer to lose here and get a glorious victory in the Supreme Court? No. I would prefer to win here and not have to go to the Supreme Court. I mean, yeah, it would be nice to win in the Supreme Court, but, you know, that would — how many years from now would that be? We're dealing — again, we're dealing with our clients who are seeking money for 1991 through 97. I don't think I want to spend another three years litigating this case, you know, on the waiver issue if I can avoid it. Think about arguing in the Supreme Court. It would be fun. It would be fun. But I'd rather win here. Let me talk about — again, we don't — because ExxonMobil doesn't really address the key argument, wasn't given the opportunity to address the key argument, we don't think ExxonMobil really is a binding holding. And, you know, we quoted a statement out of U.S. v. Johnson, a 2001 Ninth Circuit case, which said not — Do you think we called Judge Fletcher? I think she's next door, you know, sort of like Marshall McLuhan if we pulled her out from behind the curtain. I would — Do you really think this was dicta, Judge Fletcher? Do you think she'd say that? No, I don't think it was dicta. I think it is a holding, but it's a holding that didn't analyze the argument. And we're — an argument — Oh, I see. We say, oh, did you realize — do you think this is a holding that doesn't analyze the argument? I would ask Judge — Therefore, we can ignore it. I would like to ask Judge Fletcher whether the Court considered whether there was a difference between adjudications and rulemakings. Does that make a difference? Yeah. I mean, we don't have to follow precedent in the Ninth Circuit if we don't think it was adequately considered. Well, that seems to be what some of the cases say. Yes, Your Honor. If the case — if an important argument — By holdings, not just comments. Understand. If an important argument wasn't considered, then, as I read the Ninth Circuit precedent, the — a panel is not bound to follow the prior — What's the best case on that proposition? Well, there is State of Magnin, which talks about assumptions. There's a case that we've cited in our brief. I don't — there's — we just cited three cases in our brief. The State of Magnin is one of them. We cited one other in our brief, and I can't remember the name sitting here right now. And then there's the Johnson case where they said, you know, again, not every statement of law is binding on later panels. It's precedential only where the issue is fairly presented to the court and refined through the adversary process, and the court has decided to have their careful analysis rather than through a broad statement of principle. That's U.S. v. Johnson. I think that's a very good statement of what we perceive the rules to be. So I think — yeah, it's a holding, but it's a holding that didn't consider the key argument, at least appears not to have. And looking at the underlying briefs, nobody raised the issue. So I don't think such a holding ought to be binding on later panels. Let me — a couple other points on — quickly on Vix on mobile. It also didn't discuss the two nonspecific cases which I mentioned a minute ago, the Bonneville Power Administration case. It's a 1997 case, and the Kunikama case, which is a 1984 case, both of which said participation in rulemaking is generally not required to challenge a rule in court, and then they apply except for that limited Vermont Yankee exception when the party fails to respond to an agency's request for assistance. Again, those cases weren't raised by the parties in ExxonMobil, and the court obviously didn't discuss them. So I don't think we have a fully litigated issue in ExxonMobil. Okay, let me move to the question of — address some of the policy issues here. What's the consequence of adopting an issue waiver rule in rulemaking? Well, you could — there are at least two problems with it. You consider — let me give you an example. Consider a Medicare beneficiary who's told by his physician that he needs a procedure, learns that two years ago the Medicare program adopted a rule that said procedure's not covered, we won't pay for it. Nobody objected in the rulemaking to that procedure. That patient would be foreclosed. That beneficiary would be foreclosed from challenging the rule. That seems to me to be improper, seems to me to be bad policy, seems to me to be wrong. Another problem with the — applying the doctrine of issue waiver to rulemakings is you'll have, as Your Honor was suggesting earlier, you'll have invalid rules that are not subject to challenge, rules that are flatly contradicted by statute, rules that are clearly arbitrary and capricious. Nobody will be able to challenge those rules. The agency will continue to be — Is that this case? Is that this case? Obviously, we brought this case because we think the rule that we're challenging was arbitrary and capricious. Well, it's not that nobody can. It just has to be somebody who wasn't around at the time. That's not what the courts — that would be a different twist on issue waivers. The courts have applied it. The courts have said that nobody can challenge a rule if the objection to the rule that the party wants to raise today wasn't raised yesterday in the rulemaking. So it doesn't have to be this specific party. Correct. Or it doesn't even have to be a party that was around at the time. That's right. Again, my Medicare beneficiary example. I'm a beneficiary. I didn't participate in the rulemaking, yet I'm going to be foreclosed from challenging the rule. Well, but you could have. But I didn't even know at the time that I needed that operation. That's a different issue whether you could have or might have. But if you weren't born, that is a different case. Or if this were an entity that was created after the rule, it may be in a different position. Does the issue waiver apply so broadly, so it's applied to entities that weren't even in existence at the time? It seems to, the way the courts have interpreted the issue. And where do you cite that? What are your thoughts? I don't know. That's a good question, and I don't know if I can give you a good answer sitting here right now. I think it probably would be a more accurate answer, because I guess so. No, I would say this. The broad statements of the courts on the issue waiver concept would encompass the example we described. And no exception has been carved out for that example that I'm aware of in any of the cases. Whether a case is specific. Maybe it hasn't come up. Maybe it hasn't come up. But the logic of waiver is difficult to apply to an entity that couldn't have. You can't waive. I mean, waiver is personal. And unless you point me to a case that suggests that some entity can waive it for all other entities in the future, I have to assume that somebody that comes along later, that wasn't around, couldn't have objected, wouldn't be covered. And if that's the case, and you really don't have a rule that can't be challenged by anybody, it says it can't be challenged by those people who could have come in and objected. And they have to sort of sit around and take in the shorts until somebody comes along and challenges who can. Right. And my only response right now, because I don't know of such a case, it may exist, I don't know, is that the statements that the courts have made to date would not encompass such an exception. They've never discussed the issue has never been, has the particular party had the opportunity to participate in the rulemaking. That's not been the critical issue in most of the cases. They've just flat out said, if the issue isn't waived, isn't raised in the rulemaking by somebody, it's waived. It's very broad statements. Maybe a court would carve out the exception that you're talking about, Your Honor, but I haven't seen the case either way. Let me ask you this. Isn't this issue one that can come up in distinct ways, two categories of cases? You can have a case where the attack on the rule is based on its invalidity under the statute, a pure legal issue. And that would be an issue that would be preserved whether you appear or not, because it's a legal issue that goes to the underlying validity of the rule. But you could also have a case in which the issue turns about on whether the agency considered certain kind of evidence, statistical evidence, data about medical costs, that sort of thing. And that evidence was not offered by a party. After the rule is made and goes into effect, the party then wants to offer the evidence. That seems to me is this case.  And I don't think that's a good way to go about it.  I think the distinction is that if you had evidence that you think was relevant to the rule, you should have offered it when you had the opportunity to do so. And you lose that opportunity. What do you think? I understand the distinction. The cases haven't supported that distinction. The cases have said that even with respect to legal issues, we're going to apply issue of exhaustion, strict legal issues. Is that precluded in the distinction? There's at least one case. And again, I don't have the citation in front of me today. But it's in our at least one of the cases that we've cited in our briefs does apply that rule. It says that issue waiver is applicable to straight legal issues to the same extent as it is to an arbitrary and capricious relevant factors type challenge. Since you don't remember the case, you can't tell us it's a nonsurface case. It's not a nonsurface case. How can you apply the statutory requirements until you have after the fact historical data? If the hospital performs services and the secretary is trying to get a framework on these cases, you can't get it until you know how many people have overstayed their stay at the hospital, can you? Well, you can't. That's what makes these percentages go outside the statutory range. Yeah, you can't. And, you know, in this case, we're not arguing that we win straight strictly under the statute, which requires that the outlier payments be between 5% and 6%. We're recognizing what the D.C. Circuit said in County of L.A., which says that all that the secretary has to do is to make his best guess, set up the system prospectively to the best extent he can so that he would predict that he'd hit the 5% to 6% range, but we don't require a retroactive reconciliation, a retroactive look back. That's what the —  Well, thank you, Your Honors. We'll hear from the government. Your Honors, may it please the Court, Craig Green representing the Federal Government in this case. In this court in ExxonMobil held, and it's conceded to be a holding, that an objection to an agency rulemaking must be raised during the notice and comment proceeding by some entity, or if it is not, absent extraordinary circumstances, that objection is waived. Who are the parties that would have standing to object? Your Honor, the standing — Anybody in the public? Your Honor, the standing question, I think, is distinct. The people standing would be based on a traditional Article III inquiry and perhaps also prudential considerations regarding a particular statute. So anybody under Medicare? In this particular context, the people who would have standing to offer notice and comment, is that the question? Or, yeah, the notice and comment proceeding was wide open. Any interested party may come forward and — So I show up and all their people can sign on to an objection, and the Secretary will answer every one of them? And, indeed, 47 — two points. 4,700 parties did, indeed, come forward with these rulemakings and offer objections. And, number two, under the Chenery analysis and established administrative law, the Secretary does have an obligation to respond to substantive objections and explain on the record why they did not adopt that. And if, indeed, Your Honors, consult the Federal Register citations, and I consulted the one from 2003 this morning, they go through and discuss the substantive comments and say parties objected this. Did the Universal Health Service appear in this one and object? Your Honor, there are 79 hospitals in these consolidated cases, and I don't have any specific information as to whether any or all of them did. That, for the standing issue, I meant to say, is distinct from the issue waiver. For the issue waiver question, the important question is not whether the individual parties came before the agency, but rather whether the substantive objection was raised. In that event — That's how you are phrasing the issue, but that's not how ExxonMobil seems to have. Petitioners have waived the right to judicial review with an argument as they were not made before the administrative agency. The they is ambiguous, Your Honor, between the objections and the parties. I think the they better refers to the objections, and that is our construction of the rule. That's our construction of the ExxonMobil rule. It is an issue? It is an issue waiver. Not a person? Not a person. And the reason for that has to do with the nature of administrative rulemaking. There are many policy reasons, which, of course, are not properly before this Court necessarily to evaluate, but reasons why that rule makes sense. But it could just as easily be right to say they were not made by this party. That could be a rule, Your Honor. We don't think that Exxon holds that, and this Court could adopt that rule. It's not a rule that we advocate. It's not the rule that's been adopted in other circuits. And I think one other important point is that is the difference between the — What you're saying, then, is that one party's action or inaction would then bind everybody else, whether the person was in existence, whether it came along later, whatever. With respect to that hypothetical, Your Honor, I think the question would be whether there was adequate notice. And I think the standards for notice are established. I don't believe that it would allow an individual who was born, for example, after the rulemaking issued to say, I wasn't born at that time, and I want to come forward and challenge it after the fact. I don't believe that would be a valid exception. If it were, if it were a valid exception, it would be — it seems to me, under established jurisprudence, it would be because of some requirement of notice that went beyond traditionally understood concepts of notice in this context. But — I have no clue what you're saying. Okay. What I'm saying is that an entity — I understood Your Honor's hypothetical to be if there were an entity who came later, that entity would be bound by the inaction of predecessors in interest, as it were, or people who did or did not object at the rulemaking. Which from total strangers. Total strangers. Yes, indeed, Your Honor. By the total strangers who failed to raise the substantive objection in the notice in comment. And then they couldn't do it because they were still busy gestating. Yes. The latter total stranger was too busy gestating, yes. But the issue waiver rule, as it is established, does not provide that people may — people gestating or otherwise or corporations formed later may come forward and challenge a rulemaking on a substantive ground that was not raised. That fact is not distinct, as Your Honor also was noticing, from an adjudication, where oftentimes parties are bound by the actions or inactions of total strangers. And, indeed, decisions are made and those decisions become final and operative. But it's not a waiver. Waiver involves some personal responsibility. You may be bound by something for a variety of reasons. A passage of time, the issue is completely done with — but it's not a waiver. I'm just wondering where you get this idea that parties yet unborn have waived things. Your Honor, it is a waiver that's different. It is different in that regard that you identified from the adjudicatory context. In adjudication, although one may be bound by a decision one didn't participate in, one wouldn't say that universal hospitals, for example, waived — they wouldn't be included in Judge Fletcher's statement, for example, with respect to that. Well, they're not included in Judge Fletcher's statement at all unless — you know, you want to argue that it should be read that way. And other than sort of earnest appearance you have, and you obviously believe that to be the case, you haven't told me why, what it is about the rule or what authority there is that says that people who are not around and couldn't have raised the objection would still be deemed to have been waived. What's the authority for that? Well, the authority — if I may distinguish two separate questions. One of them had to do with the difference between — Which wasn't my question. I thought they were both yours. But the one with respect to the authority of why it is that issue waiver applies, the authority primarily, of course, in this circuit would be Exxon Mobil. There are other circuits — Exxon Mobil doesn't say. Exxon Mobil does not say. I mean, if you read the language in Exxon Mobil, it applies. Petitioners have waived the right to judicial review. Because? Because of these final two arguments as they were not made before the administrative agency. The arguments, indeed. And that case and neither does this case consider the gestating problem, the problem of someone who comes after the fact. The hospitals, in this instance, can see actual notice. So if Your Honor was looking for authority for that proposition of foreclosing future parties, our suggestion is that that is the way other courts have interpreted the rule. The policy reasons, which I'm happy to discuss, lead in that direction. But neither this case nor Exxon requires — What's the citation? Other courts. You sort of give me — you know, give me the case. A case that has said that — a case that has stated the rule without any exception for parties who did not come forward. I mean, the — Who did not exist. None of the courts has made any exception on that ground. And they have stated the D.C. Circuit, for example. I haven't gone through and recited all the cases. This is a longstanding rule in the D.C. Circuit. And I would be surprised to learn that they had — every discussion of that issue — You're telling me you can't come up with a case. Well, Your Honor — Give me a case that stands for the proposition that an after — a party that comes afterwards, that wasn't around and couldn't have objected, is nevertheless bound by this rule. Okay. Okay. And you can cite it after the proposition without adding a C. Just the case name, okay? The reasoning in ExxonMobil says because the objections were not raised. I do not have a case in mind that addresses the question not raised in this case or in ExxonMobil about an after-created party. You still have 10 minutes. Let's say you don't have a case. And maybe — maybe, you know, you have a case later. But you don't know the case right now. I apologize for wasting my 10 minutes. But, Your Honor, my — my suggestion — Give him 10 minutes. My suggestion is — In fact, give him back to you. That's for sure. Your Honor, my suggestion — I guess you've exhausted your answer. Did Universal Health know at the time of the rulemaking proceeding what the secretary was going to do about the things that they're challenging subsequently? In other words, is this something that was before them at the time of the rulemaking that they could have challenged? Or is this the outcome of the rulemaking that they're challenging now? I believe they're doing both, Your Honor, both challenging the outcome after the fact, what one would characterize as — Well, they're not precluded from doing that, surely, by not appearing in the rulemaking. Challenging the outcome. I think on making the substantive arguments based on the statistical analysis that they're making, I think maybe I have a different understanding of the word outcome. But they are definitely challenging the methodology that the secretary used. Okay. Did they know that the secretary was using that methodology at the time the rulemaking began? In relevant respects, yes. They make two arguments that they did not have notice. One argument is that they did not know the actual figures of the cost-to-charge ratios that the agency was going to use. And they claim that there was a declining trend of cost-to-charge ratios and that the secretary should have anticipated that. As our brief explains, however, the decline in cost-to-charge ratios was something of which they were aware at that time. So are there some aspects of this rulemaking that they didn't know about until it came — until the final conclusion of it? They have not so argued. The other argument they make regarding notice is they say they did not know that the agency was not going to factor in case mix, which deals with the variety of DRG, different types of discharges that a hospital may have. They didn't know that until the end? They claim that. But on the other hand, when the secretary moved from a charge inflation to a cost inflation method in fiscal year 1994, the secretary before that time had made very clear that there were adjustments for case mix. In 1994 forward, they made equally clear by omission that they were not making such adjustments. And so, again, our suggestion is that in that relevant respect, there was nothing about this rulemaking that was not evident to the 79 hospitals and to all of the other people at that time that would have precluded their doing so. And, indeed, as I mentioned, there's no other argument to that effect here. With respect to Your Honor's question regarding future created agents, none of the 79 hospitals has claimed to be such. And if indeed, which may be true, if indeed that raises novel legal issues that have not been considered by any prior authority, then we would encourage the Court to not decide those questions here. Yes. No, Your Honor. Well, I think it does have a decent pedigree. I don't think it does. No, Your Honor. That's right. It is an attempt by the agency to obtain policy input. Yes, Your Honor. It tells the public what it's supposed to do in light of the statute, how it's supposed to exercise its discretion, and then asks for people to comment. And, naturally, what people would comment on or what the process contemplates is that it would mostly or largely go to policy questions, so questions of whether or not this is a wise exercise of the agency's discretion. And you leave legal questions. I mean, sometimes you could raise a legal argument and say, well, you know, it's a bad policy to adopt this because you're going to go to court and it's going to get struck down, so there's another reason you shouldn't adopt it. But I've never sort of noticed a common rulemaking as being a form for adjudicating legal claims. It's not a form for adjudicating. It's a form for deciding, however. And the ExxonMobil case did consider a straight-up question of statutory interpretation. Those were — there, I think, were four different statutory arguments. Two of them were raised. Two of them were not. Well, I understand. You keep citing it. I'm asking you to explain to me why this is a good rule or why this is a wise rule or why this is even an intelligible rule. Yes. I mean, you know, take the hypothetical that Judge Beza gave at the very outset. The statute says $5. Yes. The regulation says $3. Nobody — you know, it's a huge regulation. There's tons of stuff. Nobody knows it. Nobody challenges it. And then everybody in the world is stuck with having the agency violate the law. Yes, Your Honor. And what's the wisdom in that? If I may start with a pedigree question first. ExxonMobil, the question was 2.7 or 3.1. It was a statutory question. The claim was that the agency was misinterpreting the authorizing Clean Air Act statute. And so I think insofar as ExxonMobil controls, which I understand they argue that it does not, even though it's a holding, insofar as ExxonMobil controls, right or wrong, wise or unwise, we believe it's resolved for this circuit. I would also mention in relation to those questions you offered opposing counsel, there are other circuits who have — that have reached a different conclusion on that question. The Fifth Circuit case that's in the 28J letter specifically distinguishes between statutory considerations of which the agency should be aware even without notice and comment and those of other types. L.A. Trucker indeed itself was a statutory case, although it was an adjudication. And it distinguished between statutory requirements that were substantive and ones that were jurisdictional. If there were a jurisdictional exception, there's another way of getting around the issue waiver rule when it's a particular type of rule. As to the wisdom, which I think is a very important question, the suggestion by the other side is that in adjudications, the purpose was to have people come forward and raise all of their arguments, and that in rulemakings, the purpose of the Congress was to have people be able to raise them after the fact in court for the first time. And the courts of appeals that address that question have said that the same channeling functions, the same interests in agency decision-making, not just agency litigation, but agency decision-making, propriety of rules, administrative finality, the possibility of tactical sandbagging, which is not the case here but does arise in other contexts, and a substantive filter. There is, discussed in the Vermont Yankee case and other administrative law cases, there is a requirement that the prophylactic rule that people need to raise their objections in the notice and comment substantively bars the possibility of Monday morning quarterbacking because, as in this case, Your Honor, this particular case illustrates. You make it sound so positive. I mean, all of these things that you're saying could just as well be listed as horror stories. You know, once this process passes, if somebody else, you know, you can do it, the agency can go on and keep doing the thing that's unauthorized by Congress, unsettled by any possibility of challenge because they did it. Yeah. I mean, you know, all of these things that you make sound so great sound to me pretty bad. And, you know, just because you're sort of a good cheerleader and you can put a good face on it doesn't make it. These are not very good arguments. I'm just really wondering. This is stuff mostly cooked up by the D.C. Circuit, right? No, Your Honor. It's not just cooked up by the D.C. Circuit. Mostly. The D.C. Circuits are the largest part. After Sims, the Sixth Circuit case is after Sims. Obviously, the Ninth Circuit case is after Sims. The Fifth Circuit, which is obviously endorsed as a well-reasoned circuit, certainly had the division. Also recently. It was in Vermont Yankee, right? The D.C. Circuit? The D.C. You get reversed a lot in these big administrative cases. I think the D.C. Circuit relies on L.A. Tucker Truck as well. The reason is because the relationship between the courts. Where is L.A. Tucker Truck? L.A. Tucker Truck is a 1952 Supreme Court opinion. It's the one that's cited. It's cited many times in our brief. It's a. You're looking. If it's good enough. I'm sorry. Would you like the citation of that case? Is that what I mean? Oh, it stands for the. It's an adjudication case. And it was a case in which the ICC allegedly was improperly formed when it decided a person's claim. And the person raised that objection in court. And I suppose the analogy would be that the person came to court and said, if you don't allow me to do this, they will have an arbitrary and capricious and improperly formed commission decision on the books. And the Supreme Court, speaking through Justice Jackson, said that in the interest of administrative fairness, in the interest of administrative judgment, and those common law principles predate the APA and are enacted in the APA, the balance between the requirement that the secretary respond to comments, the requirement there be notice and comment indeed invites the possibility not just about town hall meeting, but the idea that people who have substantive objections to a rulemaking, which is a very costly enterprise indeed undertaken every year in this instance, that they come forward and that allows for a correction of the agency's. Period sometime. I beg your pardon. Are you going to come to a period? You've started this long sentence and I've got totally lost in it. I'm sorry. I'm sorry. What I was trying to say is that there are good policy reasons for the L.A. Trucker's application. But L.A. Trucker's was an adjudication. Beyond the adjudication context. What does Sims do to that? Sims does nothing to that. Sims is a plurality opinion, the concurring opinion by Justice O'Connor, which would be the controlling narrower opinion. So that case was about affirmative suggestions that people didn't need to raise their issues, not before the ALJ, but the Appeals Council. The reason why the question I was endeavoring to answer, and I apologize for the long sentence, the question I was endeavoring to answer was why this rule that was formed by a court in the adjudicatory context, why it bears application and why the courts of appeals have applied it, including this court, to administrative rulemaking. And the reasons have to do with the fact that it's a very costly process, endeavored every year, done with a great deal of accuracy in this instance. Seventeen years they did this. Eight years it was high. Nine years it was low. Average error, 0.01 percent. You just seem to be arguing that what the legislative branch ordained doesn't mean a damn thing to the executive branch, right? No, Your Honor. And it doesn't control at all. They can just willy-nilly, if they listen to everybody who has something to contribute, can go against the statute. It's a very important point, Your Honor. Why aren't these hospitals being paid in accordance with what Congress directed? You've got a very, very narrow range within which you can operate, 1 percent on the overstates. It didn't work out five years in a row.  I mean, there's no suggestion that those estimations were accurate, but Congress mandated, not discretionarily,  It's a very narrow range. His formulation is based on historical fact instead of existing fact, and that's his problem. Your Honor, starting with the specific and then going to the general, the agency failed to anticipate, as all of the 4,700 comments failed to anticipate, the level of declining costs that occurred during those years. I mean, there's no suggestion that those estimations were accurate, but Congress mandated, not discretionarily, mandated that the secretary pay based on estimations, not based on realities. The secretary did and has done the estimations during these years. Those estimations were wrong because they failed adequately to anticipate the level of declining costs during that time frame. As to the more, and that, again, the brief documents, that that is not a systemic problem. It is not, in some years they get overpaid. They get overpaid, they never have to pay the money back. The secretary always pays based on the estimates, and those estimates, per Congress's prescription, are often wrong. It's a very complicated process, and they are often wrong, but not in any one direction. It's just that during that time, there were declining costs that weren't anticipated. As to the more general point, it is not a claim that the executive has power to do whatever it wishes. The claim is that Congress has very narrowly, and Congress and the executive and the courts have an administrative structure that does not allow courts or does not prescribe courts to hear these issues of what's the cost-to-charge ratio, what's cost inflation, what should they have known, what experts are right in the first instance. That issue in adjudications and rulemakings by Congressional prescription is to be made by the agency in the first instance. If the agency errs, then the political branches can correct it, either through legislative action or through a petition for a new rulemaking, which is obviously always available. It sounds to me like the kind of proceeding that should be done by adjudication and not by rulemaking. Isn't the problem here really that the agency is engaging in the wrong kind of administrative process? And without adjudication, people bring evidence. There are all sorts of things you can do to participate that you can't do during notes and comment. That's exactly right, Your Honor, that there is a difference between adjudication and rulemaking. Congress, in its wisdom or folly, prescribed in the statute that it be done this way. And Congress did not understand because the agency does not have discretion to use adjudication. They're prescribed to do it by rulemaking, and there are specific requirements for notes and comment. That is the statutory framework. And the other possible folly is it's designed to be done on a prospective basis, with the knowledge that those prospective estimates may well be wrong. But if I may say one other thing about congressional understandings, which are also implicit, but it is not Congress's understanding that when they erect a rulemaking, that courts will hear these issues in the first instance, and under adjudications, it will go to the agency in the first instance. As Marathon Oil ---- Has Congress taken our jurisdiction away expressly by saying that appeals to the courts shall not be entertained in any of these? No, Your Honor. And this is not a jurisdictional issue, because we do not in any way ---- Okay. So what jurisdiction? Yes. Congress recognizes that. Yes. Absolutely. They want general jurisdiction to deal with Federal law, and this is Federal law, right? Yes, Your Honor. And the only question is the substance of that. There's no question that it's final. There's no question they have standing. There's no question there's jurisdiction. The question is the substance of that review. And the courts of appeals, including this one, who have addressed the question, have adopted that narrow with the substantive question, not the jurisdictional one, have given courts a particular role to play, and it is not one to hear in the first instance. I see that my time has expired. I'm happy to answer any further questions. I think most of our time has expired. The case is argued and submitted. Thank you, Counselor. Good argument. We have the next case on the calendar. Thank you, Your Honor.
judges: Beezer, Kozinski, Schwarzer